UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY A. WILLIAMS,

    Plaintiff,    Civil Action No. 13-12617

v.    HON. STEPHEN J. MURPHY, III
U.S. District Judge
HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL    U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded to the administrative level for further administrative proceedings.

## PROCEDURAL HISTORY

On October 5, 2010, Plaintiff filed applications for DIB (Tr. 125-131) and SSI

alleging disability as of December 10, 2009[1] (Tr. 119-124). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on December 6, 2011 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy C. Scallen (Tr. 24). Plaintiff, represented by attorney William Watkinson, testified (Tr. 27-58), as did Vocational Expert ("VE") James Fuller (Tr. 58-60). On January 27, 2012, ALJ Scallen found that Plaintiff was capable of performing her past relevant work as a sales attendant (Tr. 20). On April 10, 2013, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on June 14, 2013.

## BACKGROUND FACTS

Plaintiff, born October 29, 1973, was 38 when the ALJ issued his decision (Tr. 20, 125). She completed high school and worked previously as a babysitter, factory worker, and nursing assistant (Tr. 152-153). She alleges disability due to a back injury, scoliosis, and arthritis (Tr. 152).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony.

She worked as a nursing assistant until May, 2009 (Tr. 28). Her work as a nursing assistant required her to give baths, change linen, and transfer patients from bed to wheelchair (Tr. 30). She worked full time and was required to lift up to 125 pounds (Tr. 30). She stopped working in May, 2009 after pulling a muscle in her back (Tr. 31). She was

---

[1] The alleged onset date was later amended to January 11, 2010 (Tr. 193).

prescribed Flexeril and diagnosed with scoliosis (Tr. 31). After the back injury, she worked full time as a babysitter for a friend (Tr. 32). In December, 2010, she stopped working as a babysitter when her body "started shutting down" (Tr. 33). At that time, body pain caused difficulty walking even a few feet (Tr. 33). Her babysitting job entailed caring for a two-year-old, but did not require her to lift him (Tr. 34). She attributed her worsening health to the change of weather (Tr. 35). She did not collect unemployment benefits after leaving the nursing assistant position (Tr. 35-36).

Plaintiff rated her level of low back pain at "nine" on a scale of one to ten (Tr. 36). She took Vicodin four times a day (Tr. 36-37). Vicodin did not relieve her pain, but helped her sleep (Tr. 37). The back pain radiated into her buttocks, thighs, and calves (Tr. 37). Plaintiff was currently recovering from a hysterectomy performed two month earlier, but had been told by her back doctor that she was a good candidate for a rhizotomy[2] (Tr. 39). In addition to the lower back pain, she experienced hip, ankle, and hand pain (Tr. 37-38). She had been using a cane since 2009 because her legs would periodically "give out" (Tr. 38). For the last six months, joint pain caused sleep disturbances (Tr. 38). Cold exacerbated joint pain (Tr. 40).

Due to back pain, she was unable to sit for more than five minutes at a time or perform any stooping (Tr. 41). She did not experience problems reaching except when having hand

---

[2]An outpatient patient procedure in which electrical currents are used to "destroy nerve fibers." http://www.mayfieldclinic.com/PE-FACET.htm#.U-EDmPldXjU (last visited August 5, 2014).

pain and swelling (Tr. 41). She estimated that she experienced hand and finger swelling four times in six months, occurring for any time between two hours and three days (Tr. 42). She did not experience problems with personal care activities but was unable perform any housework (Tr. 43). She had not driven since losing her license in 2001 following a car accident (Tr. 43). On a typical day, she would arise at 6:30 a.m. to help her kids prepare for school, then spent the rest of the day alternating between sitting and reclining (Tr. 45). On a bad day, she was unable to get out of bed (Tr. 45). She experienced three bad days each week (Tr. 45-46).

In response to questioning by her attorney, Plaintiff stated that her health was good before May, 2009 (Tr. 47). She testified that she obtained welfare in April, 2010 (Tr. 47). She was required to attend Michigan Works, a job retraining program in exchange for welfare, but back and body pain prevented her from attending regularly (Tr. 48). She was "pulled out" of the program after it was determined that she was unable to sit for significant periods (Tr. 49). Due to a bureaucratic snag, she was unable to obtain medical care between late 2010 and the first half of 2011 (Tr. 50). She underwent a hysterectomy in October, 2011 and had recently received injections to alleviate her back pain (Tr. 53). For seven years prior to undergoing the hysterectomy, she endured abdominal pain and very heavy menstrual periods (Tr. 56). She coped with back pain by using a heating pad and alternating between sitting, standing, and reclining (Tr. 57). She stated that she was planning on undergoing a rhizotomy recommended by her physician (Tr. 55).

**B.     Medical Evidence**

### 1. Treating Sources

In June, 2009, Plaintiff sought urgent care treatment for a strep infection (Tr. 194-197). Treating notes state that she arrived "with a steady gait" and appeared comfortable (Tr. 196). She demonstrated the ability to rise from a sitting position "in a single movement" (Tr. 194). She exhibited a normal range of motion in all extremities (Tr. 195).

May, 2010 treating notes by East State Fair Clinic state that Plaintiff reported pain as a result of the May, 2009 workplace injury (Tr. 212). June, 2010 treating notes state that a pap spear resulted in abnormal findings (Tr. 209, 226). Hassan Amirikia, M.D. found an ataxic gait, diagnosing Plaintiff with scoliosis and lumbar spondylosis (Tr. 220). He ordered facet injections, physical therapy, and a lidoderm patch (Tr. 220). Treating notes by Dr. Amirikia from later the same month state that Plaintiff failed to keep an appointment to discuss a biopsy (Tr. 219). An ultrasound of the pelvis revealed a right ovarian cyst (Tr. 225).

In August and September, 2011, Plaintiff underwent nerve block injections (Tr. 237-242). She reported an 80 percent improvement in back symptoms (Tr. 241). The following month, Plaintiff underwent a hysterectomy, performed without complication (Tr. 286). In December, 2011, Dr. Amirkia opined that due to the recent surgery, Plaintiff should delay back surgery for "another month."

## 2. Non-Treating Sources

In January, 2010, Sonia Ramirez, M.D. examined Plaintiff on behalf of the SSA, noting Plaintiff's reports of lower back and extremity pain since the workplace injury in May, 2009 (Tr. 200-202). Plaintiff reported that she coped with pain by changing positions every 15 to 20 minutes (Tr. 200). She denied the ability to lift more than two pounds (Tr. 200). She reported working for 21 years as a nurse's assistant (Tr. 200). Dr. Ramirez observed range of motion limitations of the lumbar spine and in bending and "getting on and off the examining table" (Tr. 201, 206). A straight leg raising test was positive on the right (Tr. 201). Plaintiff walked with a limp (Tr. 201). Dr. Ramirez opined that Plaintiff was unable to work at the time of the examination (Tr. 201). She noted that Plaintiff had not undergone CT or MRI testing or enrolled in physical therapy (Tr. 201). An x-ray of the lumbosacral spine was negative for fractures (Tr. 203).

In January, 2011, Cynthia Shelby-Lane, M.D. performed a second consultative examination of Plaintiff on behalf of the SSA, noting Plaintiff's report of pain upon "prolonged standing, stooping, squatting, getting up, walking, lifting, bending, pushing, pulling, reaching and climbing stairs" (Tr. 228). Plaintiff reported that she was first diagnosed with scoliosis in 1986 (Tr. 228). She exhibited a slight limp (Tr. 230). Dr. Shelby-Lane concluded that Plaintiff "may have difficulty with prolonged standing, stooping, squatting, lifting and bending" (Tr. 230). She found that the clinical evidence supported the need for a cane (Tr. 235).

The following month, Muhammad Mian, M.D. performed a non-examining Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 255). Dr. Mian found that Plaintiff was limited to occasional balancing, stooping, and climbing or ladders, ropes, and scaffolds but could climb stairs, kneel, crouch, and crawl on a frequent basis (Tr. 256). He found the absence of additional limitations (Tr. 257-258). In support of his findings, Dr. Mian noted that Plaintiff was capable of personal care activities, riding in a car, shopping, listening to music[3], and going to church (Tr. 259). He cited Dr. Ramirez's statement that "[t]here is a big possibility that [Plaintiff] could return to work after she has received the proper medical attention" (Tr. 260 citing 203).

### C. Vocational Expert Testimony

VE James Fuller classified Plaintiff's past relevant work as a nurse's assistant as semiskilled and exertionally medium; cleaner, unskilled/light; sales attendant, unskilled/light; and baby sitter, semiskilled/medium[4] (Tr. 58-59, 187). The ALJ then posed the following

---

[3] It is unclear how the ability to listen to music translates into the ability to work.

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

set of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

> [L]ight exertional level with a sit-stand option. Also limited to occasional climbing of stairs and ramps, no climbing of ropes, ladders and scaffolds. furthermore, limit to occasional stooping, kneeling, crouching and crawling, aroid concentrated exposures to unprotected heights, moving machinery, avoid even moderate exposures to extreme cold or wet. With those limitations alone, could she do her past relevant work? (Tr. 59).

Based on the above restrictions, VE found that Plaintiff could perform her past relevant work as a sales attendant (Tr. 59). If the above-described individual were limited to sedentary work, all of Plaintiff's past relevant work would be eliminated (Tr. 59). The VE found however that the above limitations did not preclude the exertionally sedentary jobs of assembler (3,000 positions in the regional economy) and packer (2,000) (Tr. 59). He testified that Plaintiff's alleged need to recline for four hours each day, or, the need to miss more than one day of work every month would preclude all gainful employment (Tr. 60).

### D.     The ALJ's Decision

Citing Plaintiff's treating records, ALJ Scallen found that Plaintiff experienced the severe impairments of "low back pain due to history of back injuries, scoliosis and arthritis" but that none of the impairments met or equaled a listed impairment under 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 16). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> [A] sit/stand option; occasional climbing of stairs and ramps; no climbing of ropes, ladders, and scaffolds; occasional stooping, kneeling, crouching, and crawling; avoid concentrated exposure to unprotected heights and moving

machinery; and avoid even moderate exposure to extreme cold or wet environments (Tr. 17).

Citing the VE's findings, the ALJ found that Plaintiff could perform her past relevant work as a sales attendant (Tr. 19-20).

The ALJ discounted Plaintiff's allegations of disabling limitations, citing 2009 urgent care records noting a steady gait, good motor strength, and a normal physical exam (Tr. 18, 195-196). In support of his finding that Plaintiff was not disabled, the ALJ also observed that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual," noting "little diagnostic testing, no physical therapy, and no surgical consult" (Tr. 19). He found that "the record does not show consistent use of a cane, and there is no evidence that a cane, walker, or any other assistive device is medically necessary" (Tr. 19).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The ALJ's Step Four Determination is Not Supported by Record

The ALJ's Step Four determination that Plaintiff could perform her former work as a sales agent contains multiple grounds for remand. First, the RFC found in the administrative determination contains a "sit/stand" option but makes no mention of how often Plaintiff would be required to change positions (Tr. 17). The hypothetical question to the VE forming the basis for the finding that Plaintiff could perform her past relevant work likewise contains the "sit/stand" restriction but does not indicate at what frequency she would be allowed to change position (Tr. 59).

A sit/stand option, stated either in the RFC or hypothetical question, should include the required frequency of position changes. SSR 96–9,1996 WL 374185, *7 (July 2, 1996) ("The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing"). Generally, the inclusion of the "at will" option significantly erodes the VE's job numbers. See *Waters v. Commissioner of Social Sec.,* 2012 WL 511998, *3 (E.D.Mich. January 5, 2012) (sit/stand option would reduce light jobs by 50 percent); *Grubb v. Commissioner of Social Sec.,* 2011 WL 846073, *2 (E.D.Mich. February 9, 2011) (sit/stand option reduced existing light jobs by 90 percent). While SSR 96-9 refers to sedentary rather than light work, the importance determining the required frequency of position changes in determining the capacity for light work is similarly critical:

> The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. . . . There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.

SSR 83-12, 1983 WL 31253, *4 (1983). Moreover a VE "should be consulted . . . in cases of unusual limitation of ability to sit or stand" to determine the "implications for the occupational base." *Id.*

Although Plaintiff's testimony that she required position changes at frequent intervals implies the need for an "at will" sit/stand option (Tr. 41), the hypothetical question and RFC do not contain the frequency at which she would be required to change position. This omission is problematic for several reasons. First, it is doubtful that the position of sales attendant (as generally performed in national economy) would allow for periodic, much less "at will" position changes. The DOT job code offered by the VE, 299.677-010, *Sales Attendant,* requires the individual to help customers find merchandise, answer questions, obtain merchandise from a stockroom, arrange stock on shelves, "direct[] or escort[]"

customers to fitting rooms, and keep merchandise in order[5] (Tr. 187). The job duties laid out in the DOT do not describe activities that could be performed from either a standing or sitting position. Moreover, even assuming that the RFC containing a sit/stand option would allow Plaintiff to perform her job as performed in the past, there is no evidence that the ALJ elicited testimony or otherwise relied on evidence in the transcript to determine how Plaintiff actually performed the past relevant work. SSR 82–61, 1982 WL 31387, *2 (1982). The discrepancy between the DOT job description and the RFC, coupled with the absence of evidence to showing how the job was actually performed, warrants remand for further fact-finding.

Even more problematically, I am unable to find any evidence in the file to show that Plaintiff actually worked as a sales agent, other than the VE's unsupported inclusion of the job title in his "past relevant work summary" (Tr. 187). The SSA "employment history" states that Plaintiff worked only as a "nurse assistant" and "baby sitter" (Tr. 183). Plaintiff's application for benefits states that she worked as a nurse's assistant, babysitter, and factory worker (Tr. 159). Plaintiff's testimony is devoid of any indication that she ever worked as a sales agent. The treating and consultive records make no mention of a sales job. Plaintiff reported to Dr. Ramirez that she worked almost exclusively as a nurse's assistant for 21 years before injuring her back in May, 2009 (Tr. 200). The ALJ's Step Four finding that

---

[5]http://www.occupationalinfo.org /29/299677010.html (last visited August 5, 2014).

Plaintiff could return to her work as a "sales agent," apparently based on entirely erroneous vocational testimony, constitutes independent grounds for remand.

### B. Distortion of the Record / Lack of Substantial Evidence

I also agree with Plaintiff's argument that the ALJ assigned distorted significance to certain portions of the record while downplaying the import of evidence supporting a disability finding. *Plaintiff's Brief,* 9-12, *Docket #11.*

To be sure, the ALJ's adoption of Dr. Mian's non-examining finding that Plaintiff could perform light work over the consultative opinions of Drs. Ramirez and Shelby-Lane (finding respectively that Plaintiff was disabled or unable to perform light work) is not intrinsically improper. However, the ALJ's citation to certain portions of the consultative findings, combined with the omission of others, amounts to a misstatement of the record. For example, while the ALJ assigns significance to Dr. Ramirez's January, 2010 statement that there was "a big possibility" that Plaintiff could return to work with proper treatment (Tr. 18), it does not undercut Dr. Ramirez's ultimate conclusion, found in the next sentence, that Plaintiff was currently unable to work (Tr. 203). While the ALJ found that Plaintiff's allegations were undermined by the lack of aggressive treatment, she ignores Dr. Ramirez conclusion that Plaintiff's ability to receive such treatment had been hampered by her inability to receive CT or MRI testing (Tr. 203). The ALJ's finding that the record did not contain any evidence of nerve root impingement is similarly troubling, given that the

transcript contains only x-ray studies which would be unlikely to detect a disc herniation or nerve root impingement (Tr. 17).

In support of the finding that Plaintiff exaggerated her symptoms to Dr. Ramirez, the ALJ also cited urgent care records from the previous November stating that Plaintiff was capable of going from a sitting to standing position without assistance and could walk without difficulty (Tr. 18). However, Plaintiff sought urgent care in November, 2009 after running a fever of 101.4 as a result of a strep infection (Tr. 199). The observation that Plaintiff was able to stand without problems was made in determining whether she was a "fall risk" as a result of the her current condition (Tr. 194). Observations that Plaintiff did not appear to be in acute distress appear to refer to the severity of the strep symptoms rather than a full-blown assessment of Plaintiff's physical limitations as a result of the chronic back condition. Likewise, the ALJ's observation that Plaintiff "made no mention of back pain" at June and September, 2010 doctors' appointments seems to ignore the fact that the handwritten treating notes from the free clinic from this period are devoted mostly to recent abnormal pap smear results and Plaintiff's acute need for a followup biopsy and imaging studies (Tr. 209, 19, 225-226).

While the ALJ acknowledged Dr. Shelby-Lane's conclusion that Plaintiff "may have difficulty with prolonged standing, stooping, squatting, lifting and bending" (Tr. 230), he places the "may have" in quotations, apparently implying that such limitations *could possibly* occur (Tr. 19). However, the quotation, taken from the last sentence of Dr. Shelby-Lane's

conclusion, is more reasonably interpreted to state that the "difficulty with prolonged standing, stooping, squatting, lifting and bending" *would be expected to* cause workplace limitations. Further, the ALJ's statement that "there is no evidence that a cane, walker, or any other assistive device is medically necessary," is flatly contradicted by Dr. Shelby-Lane's finding that the clinical evidence supported the need for a cane (Tr. 19, 235). Because the administrative findings misstate as well as mis-characterize critical evidence, a remand is required.

In closing, I note that despite significant errors discussed in both sections, the present transcript does not show an "overwhelming" case for disability. While Plaintiff is not automatically entitled to an award of benefits, a remand is clearly required for further fact-finding and consideration consistent with the above findings. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140,

106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                s/R. Steven Whalen
                                                                  R. STEVEN WHALEN
                                                                  UNITED STATES MAGISTRATE JUDGE

Dated: August 7, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 7, 2014, electronically and/or by U.S. mail.

                                                                  s/Carolyn M. Ciesla
                                                                  Case Manager to the
                                                                  Honorable R. Steven Whalen